## SUSPENDO SALES CORPORATION v. BRADLEY & COURREGE et al.

### No. 1778.

Court of Appeal of Louisiana. First Circuit.

Dec. 9, 1937.

James L. Helm, of New Iberia, and Frederick K. Fall, of Houston, Tex., for appellant.

Weeks & Weeks and Edward T. Weeks, Jr., all of New Iberia, for appellee.

WALTER J. BURKE, Judge ad hoc.

This is a suit upon an open account. Plaintiff, as assignee of the Southern Mud

Corporation, seeks to recover from the defendant commercial partnership the sum of $1,275 as a balance due for drilling mud sold and delivered by the Southern Mud Corporation to defendant, which admits the purchase, and avers that the balance due on the account is $825, for which it has made a legal tender, which was refused. Defendant sets up a payment of $450 by delivery of its check to one Rheuark, the agent of Southern Mud Corporation, which plaintiff refuses to recognize; and this payment is in reality the contention between the parties.

There was judgment in the district court in favor of plaintiff in the sum of $825, recognizing the tender as legal and casting the plaintiff for costs. A devolutive appeal was taken from this judgment.

The facts as we find them are as follows:

The Southern Mud Corporation, hereinafter referred to as "The Corporation" was organized for the purpose of developing a mud deposit used in drilling operations and selling it. The evidence clearly establishes that Rheuark was employed as the agent of The Corporation through Louisiana, not only for the purpose of contacting dealers in such materials, but making sales and collections.

Rheuark sold to the defendant the drilling mud at various times, aggregating the sum of $3,225, upon which the defendant claims to have paid the sum of $2,400. Plaintiff, which is the assignee of The Corporation, claims that the payments aggregated $1,950. It appears that the number of checks delivered to Rheuark as partial payments on the entire indebtedness aggregate $2,400.

The issue arises out of the fact that Rheuark, who received a check for $450, made payable to The Corporation, indorsed it and deposited it to his credit. The issue is necessarily as to whether or not the delivery of the check to Rheuark, payable to The Corporation, was actually a payment to it in so far as the defendant is concerned.

It is well to note here that plaintiff is a corporation organized by the same stockholders and officers as were those of The Corporation.

It is contended that Rheuark had no authority to indorse this check. The defendant contends that he had the authority to indorse the check since he had the authority to collect; that, in the course of the business relations between The Corporation and defendant, checks had been delivered to Rheuark in various amounts, at various times, payable to The Corporation, and that proper credit was given for the amounts therein represented, thus establishing a course of action, which justified the defendant in continuing the issuance of checks payable to The Corporation and delivering the same to Rheuark.

Rheuark in answer to interrogatories states that "I had the exclusive sales right in the State of Louisiana, material being handled through dealers, and handled the sales promotion work throughout the State of Louisiana. I had the right to make sales to any operator in the State of Louisiana who was in a position to pay for the material and also collect on these accounts."

Continuing, he states: "I covered the entire State of Louisiana in my sales work and sold such firms as the Shell Petroleum Corporation, the Gulf Refining Company, the Texas Company and many other smaller concerns during the year 1935, and a considerable amount of business was done with the oil operators during 1935."

He states further: "Authority to make collections was given by letter, telephone and in person at very short intervals during the year 1935, prior to September, 1935. Authority was given by Mr. Edgar Younger, Mr. Dalas M. Dale and Mr. Clayton, the secretary."

It may be noted that reference to the month of September, 1935, is in regard to the time at which the check for $450 was delivered to Mr. Rheuark. His evidence is positive to the effect that he was in the habit of making collections and was urged so to do by the officers of The Corporation.

He states that the checks of Bradley & Courrege were duly forwarded to the Southern Mud Corporation in Houston, with the exception of one check amounting to $450 collected on or about September 5, 1935. He states that he received the check in question on the 5th day of September, 1935, payable to the Southern Mud Corporation and given to him just as had been done on prior occasions. This check he deposited to his credit in the Louisiana National Bank in the city of Baton Rouge, La. Document D–12, which is a copy of an invoice covering the item of $450 bears the receipt issued by the Southern Mud

Corporation through A. G. Hill, which carries the following language: "Received from Bradley & Courrege their check in the amount of $450.00."

It further appears that Mr. Dalas M. Dale desired to secure possession of the canceled check which was made payable to the Southern Mud Corporation, and, as admitted by Rheuark, indorsed by him and the funds put to his own credit.

Mr. Clayton, a witness for the plaintiff and an officer for The Corporation, makes the following declaration:

"Q. Were you not constantly urging Mr. Rheuark to collect from his customers? A. Yes.

"Q. And he did so? A. I believe so."

Further in his testimony he says:

"Q. Did you ever mail to Harry Rheuark a statement of his account? A. I believe so.

"Q. Did you not charge him on that account with this $450.00 item which he had collected from Bradley & Courrege by check #856, signed by Bradley & Courrege, per P. C. Bradley? A. Yes.

"Q. You charged him with that amount? A. Yes.

"Q. You charged him on that account with the collection of that $450.00 item from Bradley & Courrege? A. Yes, sir.

"Q. Then, after doing this, why did you not credit Bradley & Courrege with the $450.00 which you charged against Rheuark as a collection for your company? A. They were credited.

"Q. They were credited on the books of the Southern Mud Corporation with this $450.00 item? A. Yes.

"Q. Show it to me on the account that you are suing on, will you? (The account sued upon is presented to the witness). A. It does not appear on there.

"Q. Well then, the account sued on is not correct, in that an additional item of $450.00 was collected by Rheuark which does not appear on this account to their credit? A. The account does not reflect the credit of $450.00 which was collected by Rheuark and negotiated by him without authority.

"Q. Why don't it? A. Because the item is one which is known as a suspense item; one that can be correctly charged to either account or to a third account, representing items of which status has not been determined.

"Q. Nevertheless, you have charged Harry Rheuark as owing you on his account the sum of $450.00 represented by this collection of check No. 856 of Bradley & Courrege, being D-2? A. Yes, that was charged to Rheuark's account."

There is much evidence of the nature just referred to above which it would appear to be unnecessary to reproduce.

A most positive declaration as against the plaintiff (assignee of The Corporation) is the receipt given to Bradley & Courrege through their attorney, Mr. W. G. Weeks, which may be reproduced to advantage:

"New Iberia, La.
"February 12, 1936.

"Received from Messrs. Bradley & Courrege, the original cancelled check of Bradley & Courrege, a copy of which is above written. Messrs. Bradley & Courrege have been duly credited with the amount of this check. The said check is loaned us by Messrs. Bradley & Courrege for the purpose of using the check for observation. The said check is to be returned within ninety days from the date hereof.

"Dalas M. Dale."

It is attempted by the plaintiff to show that this check was worded at the insistence of Mr. Weeks and the same was not to be used, but to be surrendered on the return of the check. The statement is not impressive of the truth.

Mr. W. G. Weeks who accepted the receipt in exchange for the loan of the check in question states:

"Q. What corporation did you say it was made payable to? A. It was to the Southern Mud Corporation. So when Mr. Dale came in I asked him what he wanted to do with the check, and he said that he wanted it for observation and I said 'you will use that to sue Bradley & Courrege' and he said no that they merely wanted to use it for observation. I said 'has Bradley & Courrege been given credit for that amount?' and he said 'they have', so I dictated that receipt. When I got to the point in the receipt where I stated that they had been given credit, he objected to that going in, and I told him that, if that would not go in, he would not get the check and he said 'all right, go ahead'. And he afterwards signed the receipt. The only understanding we had was that when they would return that check, I would return the receipt."

Mr. Weeks further states that what he put in the receipt was the statement of a fact which was that Boutte & Courrege had been credited for the amount and that it was not the intention to sue them.

 Referring to the fact that The Corporation had credited Boutte & Courrege for the amount of the check collected and retained by Rheuark, and further that the evidence shows conclusively that the payment by Bradley & Courrege to Rheuark by a check payable to The Corporation was in accordance with the method of dealing which had theretofore been prevalent between The Corporation and Boutte & Courrege, there is no other conclusion but that the defendants owe no further accounting to The Corporation.

The suit is in the name of a corporation which is the assignee of the assets of The Corporation. This assignee is organized by the same parties who are the stockholders of The Corporation. The president of one is the president of the other.

Mr. Clayton, who is an officer and stockholder in both corporations, states: "That at the time of the assignment by the Corporation to the Suspendo Sales Corporation, the Corporation was insolvent; that the only consideration for the assignment on the books of the Suspendo Sales Corporation and the Southern Mud Corporation was an open stated account.

"Q. In other words, no money or property whatsoever passed between the two companies. A. The account passed between the two companies."

At another part of the evidence it is shown that it was simply a transfer of accounts from one corporation to the other.

Notwithstanding the fact that Bradley & Courrege had been credited by The Corporation when the assignment was made, the account was carried against Bradley & Courrege in an amount of $450 in excess of the real indebtedness.

 The plaintiff contends that the lower court erred in decreeing the tender to have been legal, and casting plaintiff for cost. The evidence is that defendant long prior to the institution of this suit and also prior to the attempted transfer of this account to plaintiff tendered to The Corporation the sum of $825, at its office, in Houston, Tex., in the presence of two witnesses, in accordance with law, and which tender was refused. The plaintiff now contends that this was an illegal tender because Mr. Bradley, a member of the partnership firm, requested a receipt in full.

We understand Mr. Bradley's testimony to mean that he had tendered this amount as being in full payment of his account. All tenders in Louisiana contemplate a full acquittance and discharge to those making the tender. We see no error in the ruling of the lower court.

For these reasons the judgment of the district court is affirmed. All costs to be paid by plaintiff.